UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE DAVIS, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>　　　　Defendant.<br>_____/ | No. C 06-6108 MHP<br><br>**MEMORANDUM AND ORDER**<br>**Re: Defendant's Motion to Dismiss** |

　　　Plaintiff Terrence Davis ("plaintiff") filed this putative class action against the Commissioner of Social Security ("defendant") on September 29, 2006. Plaintiff's First Amended Complaint ("FAC") alleged causes of action for violations of Section 504 the Rehabilitation Act of 1973 ("Rehabilitation Act" or "Section 504"), 29 U.S.C. section 794, the Freedom of Information Act ("FOIA"), 5 U.S.C. section 552, and the Due Process Clause of the Fifth Amendment. Now before the court is defendant's motion to dismiss this action for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted. Having considered the parties' submissions and arguments, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

I.   Allegations in Plaintiff's First Amended Complaint

Plaintiff is a San Francisco resident suffering from chronic schizophrenia. FAC ¶¶ 1 & 4. In 1985, the Social Security Administration ("SSA") found plaintiff to be disabled due to severe mental disability. Id. ¶ 4. On April 2, 2005 the SSA issued to plaintiff a Notice of Disability Cessation based on a "work review," which indicated that plaintiff had been gainfully employed and therefore not entitled to benefits. Id. ¶ 5. The SSA determined that plaintiff had not qualified for disability benefits since August 1999, and assessed an overpayment of $66,964. Id. The SSA subsequently reduced this assessment to $47,044. Id. Plaintiff asserts that he was not afforded the same procedures provided to people with physical (as opposed to mental) disabilities who are subject to work reviews. Id. ¶ 6. Plaintiff purports to represent a class consisting of "all current and future applicants, beneficiaries, and recipients of SSA programs who have disabilities which are primarily mental or invisible and who have made, are making, or in the future may make attempts to return to work." Id. ¶ 12. According to plaintiff's complaint, the SSA systematically terminates the benefits of persons with mental disabilities based on work reviews by failing to apply equal treatment to that given to persons with physical disabilities. Id. ¶¶ 17–22. In particular, plaintiff alleges that defendant's failure to consider medical evidence before terminating benefits based on work reviews disproportionately affects recipients with mental disabilities rather than physical disabilities. Id. ¶ 22.

II.  Plaintiff's Administrative Proceedings

The SSA issued its Notice of Proposed Decision regarding plaintiff's work review on October 15, 2004, advising plaintiff that the SSA intended to issue a decision finding that plaintiff's disability had ended as of May 1999 based on "substantial work." Def's Exh. 1. Plaintiff subsequently filed a request for reconsideration and an application for Supplemental Security Income ("SSI") benefits. On November 2, 2004 the SSA issued a notice confirming the findings set

forth in the October Notice. Def's Exh. 2. That same day, plaintiff requested reconsideration and expedited reinstatement of his disability benefits. Def's Exhs. 3 & 4.

On April 2, 2005 the SSA issued its formal Notice of Disability Cessation, advising plaintiff that his benefits had been terminated due to work and earnings effective August 1999, and assessing an overpayment of $66,694. Def's Exh. 5. On April 6, 2005 plaintiff submitted a request for reconsideration, a request for hearing before an Administrative Law Judge ("ALJ"), and a request for waiver of the overpayment. Def's Exh. 6. On October 17, 2005 the SSA issued a Notice of Award, reinstating plaintiff's benefits retroactive to November 2003 and reducing the overpayment assessment to $47,044. Def's Exh. 7.

On November 6, 2006 the SSA issued its reconsideration determination upholding the August 1999 termination. Def's Exh. 8. On November 15, 2006 plaintiff submitted his request for an ALJ hearing, acknowledging that his previous requests for an ALJ hearing had been premature. Def's Exh. 9. On November 17, 2006, the SSA sent plaintiff a letter requesting that he submit a form with additional information regarding his previous request for waiver of the overpayment. Def's Exh. 10. Plaintiff submitted additional materials on November 22, 2006 and December 26, 2006. Def's Exh. 11. According to defendant, plaintiff has continued to receive monthly benefit payments at all times relevant to this action and to date. Jacobson Dec. ¶ 3.

III.    Plaintiff's Civil Rights Complaint

In addition to plaintiff's proceedings directed at his own benefits, plaintiff submitted a civil rights complaint to the SSA's San Francisco Regional Chief Counsel on September 21, 2005, asserting a claim under Section 504 of the Rehabilitation Act. Def's Exh. 12. The complaint requested that the office investigate the claims and make findings, and advised that after findings were made plaintiff would file in the United States District Court if necessary. Id. The complaint asserted that the SSA abruptly terminated the benefits of those with invisible or psychiatric disabilities "based upon presumably secret lists in [sic] procedures" without providing due process.

Id. The complaint further stated that plaintiff was "unaware of any further way to exhaust administrative remedies." Id.

The SSA conducted an investigation, and on March 24, 2006, the Regional Chief Counsel issued detailed findings of fact and conclusions of law. FAC ¶ 11; Def's Exh. 13. The Counsel concluded that the SSA had not violated Section 504 by following its own procedures and regulations, and the provisions of the Social Security Act. Def's Exh. 13 at 3–4. Plaintiff subsequently sought reconsideration from the Acting Deputy General Counsel pursuant to the instructions set forth in the Regional Chief Counsel's decision. Def's Exh. 14. Plaintiff's request for reconsideration asserted, for the first time, that the SSA should have referred the investigation of his civil rights complaint to another federal agency. Id. at 2. On July 27, 2006 the Deputy General Counsel determined that the SSA did not discriminate against plaintiff and that the Regional Chief Counsel had conducted a full and impartial investigation. Def's Exh. 15. Regarding plaintiff's request that the matter be transferred to another federal agency, the Deputy General Counsel's determination stated that referral to another federal agency was not required, and that the SSA was expressly forbidden by federal regulations from delegating such authority to another agency. Def's Exh. 15 at 2.

On September 29, 2006 plaintiff filed this putative class action seeking injunctive relief, declaratory relief and sanctions. Plaintiff filed his FAC on November 6, 2006. Plaintiff's FAC alleges that defendant, when denying benefits to individuals with mental disabilities based on work reviews, applies factors different from those applied to individuals with non-mental disabilities. Plaintiff asserts that this alleged disparity amounts to unlawful discrimination based on disability in violation of the Rehabilitation Act and the Due Process Clause of the Fifth Amendment. FAC ¶¶ 18–22. Additionally, plaintiff claims that defendant has improperly withheld documents in violation of FOIA, and that defendant's failure to assign plaintiff's civil rights complaint to another federal agency created a bad faith conflict of interest. Id. ¶¶ 23–24. Defendant now moves to dismiss for lack of subject matter jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted.

LEGAL STANDARD

I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). When a defendant mounts a factual attack on subject matter jurisdiction, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). A court considering a factual subject matter jurisdiction challenge "need not presume the truthfulness of the plaintiffs' allegations." Id. The plaintiff bears the burden of proving that subject matter jurisdiction exists. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979) (internal quotations omitted).

II.     Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

5

legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

DISCUSSION

I.  Subject Matter Jurisdiction

   A.  Whether Plaintiff's Claims Arise Under the Social Security Act

Defendant asserts that this court lacks subject matter jurisdiction over plaintiff's Rehabilitation Act and Due Process claims. Plaintiff's FAC alleges jurisdiction based on 28 U.S.C. section 1331, which provides that federal courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, the Social Security Act bars suits brought under Section 1331 "to recover on any claim arising under" the Social Security Act. 42 U.S.C. § 405(h). Rather, claims arising under the Social Security Act may only be brought in federal court pursuant to the judicial review provisions set forth in 42 U.S.C. section 405(g), which requires, *inter alia*, exhaustion of administrative remedies.

The Supreme Court has employed a broad interpretation of "arising under" as it is used in Section 405(h). In Weinberger v. Salfi, 422 U.S. 749, 706–61 (1975), the Court held that an action that arose under the Constitution also arose under the Social Security Act, and jurisdiction under Section 1331 was therefore unavailable. The Court held that, although the plaintiffs' "constitutional arguments [we]re critical to their complaint," the action nonetheless arose under the Social Security Act because the Social Security Act "provide[d] both the standing and the substantive basis for the presentation of their constitutional contentions." Id.

The Court reached its holding in Salfi in part because the plaintiffs were directly seeking Social Security benefits as part of their action. Id. The Court once again considered the breadth of the "arising under" language in Shalala v. Ill. Council on Long Term Care, 529 U.S. 1 (2000). There, the plaintiffs alleged that certain Medicare-related regulations violated the Constitution, the Medicare Act and the Administrative Procedures Act.[1] Id. at 7. In assessing whether subject matter jurisdiction existed over the plaintiffs' claims, the court considered the question of whether the jurisdictional bar of Section 405(h) applies where a plaintiff, who is not seeking immediate benefits, challenges a rule or regulation "on general legal grounds." Id. at 10. The Court answered that question in the affirmative, holding that its precedent regarding Section 405(h) "foreclose[d] distinctions based upon the 'potential future' versus 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus the 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought." Id. at 13. The Court also explicitly rejected the argument that Section 405(h) applies only to claims for monetary benefits. Id.

Like the plaintiffs in Ill. Council, the plaintiff in this action is seeking a determination that various agency policies and regulations are statutorily and constitutionally invalid. In light of the holding in Ill. Council that Section 405(h) applies to bare legal challenges to administrative rules and regulations, plaintiff cannot invoke Section 1331 jurisdiction over his Rehabilitation Act and constitutional claims. The only case that plaintiff cites to the contrary is J.L. v. Soc. Sec. Admin., 971 F.2d 260 (9th Cir. 1992), overruled in part by Lane v. Pena, 518 U.S. 187 (1996). There, the plaintiffs sought declaratory, injunctive and monetary relief under section 504 of the Rehabilitation Act. J.L., 971 F.2d at 262. The plaintiffs were representatives of a putative class of mentally handicapped persons who alleged that the SSA's application procedures for SSI were so complex and demanding that the plaintiffs could not, due to their mental handicaps, obtain the payments to which they were entitled. Id. The plaintiffs therefore claimed that the SSA's application procedures violated the Rehabilitation Act's prohibition against discrimination on the basis of handicap. Id. at 263. The Ninth Circuit held that claims predicated on the Rehabilitation Act do not "arise under"

7

1 the Social Security Act, and therefore Section 1331 jurisdiction was available for the plaintiffs'
2 claims.  Id. at 264.

3    The facts of J.L. are certainly similar to the instant action.  However, although the
4 jurisdictional holding in J.L. has not been expressly overruled, it appears inconsistent with the
5 Supreme Court's subsequent holding in Ill. Council that legal challenges to agency practices and
6 procedures are subject to the limitations in Section 405(h).  Additionally, although the court in J.L.
7 declined to dismiss the action on statutory jurisdictional grounds, the court nonetheless held that
8 "prudential concerns" dictated that administrative remedies be exhausted in that case before a
9 federal court could assert jurisdiction.  Id. at 270.  Accordingly, J.L. is not compelling authority for
10 the proposition that plaintiff's claim is properly brought in this court.

11    In sum, this court cannot assume jurisdiction based on Section 1331 over plaintiff's causes of
12 action under the Rehabilitation Act and Due Process Clause.  To proceed with these claims in this
13 court, plaintiff must show that he has complied with the exhaustion requirements set forth in Section
14 405(g).

16    B.    Exhaustion
17    Judicial review pursuant to Section 405(g) requires a "final decision of the Commissioner of
18 Social Security."  The final decision inquiry is somewhat muddled in this case by the fact that
19 plaintiff engaged in two separate proceedings before the Social Security Administration: the
20 proceeding related to his own denial of benefits, and the civil rights complaint submitted to SSA's
21 San Francisco Regional Chief Counsel.  Plaintiff's claims in the instant action arise from the civil
22 rights proceeding, for which defendant acknowledges plaintiff has exhausted his administrative
23 remedies.  However, defendant claims that finality is required as to both plaintiff's individual
24 benefits claim and his civil rights claim because, according to defendant, exhaustion of plaintiff's
25 individual remedies is necessary for plaintiff to obtain standing as a class representative in this
26 action.

1    It is undisputed that plaintiff has not exhausted his administrative remedies arising out of his individual benefits claim. Plaintiff submitted paperwork related to that claim as recently as December 2006. Def's Exh. 11. However, plaintiff alleges an injury arising from alleged disparate treatment separate and apart from denial of benefits. Specifically, plaintiff claims that the stress and anxiety created by being required to challenge and correct his denial of benefits have led to increased psychiatric problems and additional medical treatment. Whether these injuries suffice to establish Article III standing is discussed below. For the present purposes, it is necessary to determine whether this allegation of a separate injury suffices to divorce plaintiff's civil rights claim from his individual benefits claim, such that exhaustion of remedies related specifically to the civil rights claim allows plaintiff to bring that claim in this court. In other words, the court must determine whether exhaustion of plaintiff's benefits claim should be waived in light of his civil rights claim.

Waiver of the exhaustion requirement is proper where the claim to be reviewed is "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir. 1989) (internal quotations omitted). Plaintiff must satisfy all three elements in order for waiver to attach. See Kaiser v. Blue Cross of Ca., 347 F.3d 1107, 1115–16 (9th Cir. 2003) (denying waiver where, although collaterality was likely present, irreparability and futility were not).

      1.     Collaterality

"A plaintiff's claim is collateral if it is not essentially a claim for benefits." Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993). Here, rather than challenging the specific, individualized procedure that was applied to his own claim for benefits, plaintiff is mounting a facial challenge to the validity of rules, regulations, policies and procedures of the SSA. Plaintiff is not claiming any irregularities related to his own benefits. To the contrary, plaintiff's theory of recovery is that the

SSA, following its own standard practices, systematically denies plaintiff and others with mental disabilities treatment equal to those with physical disabilities. Plaintiff's Section 504 claim is therefore collateral to his unresolved benefits claim. Id. (holding that a plaintiff's claim was collateral where "the plaintiff[s'] attack [was] essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of their benefits").

### 2. Irreparability

Irreparable harm for the purposes of waiver of exhaustion is present where "back payments cannot erase either the experience or the entire effect of" the purported injury. Kildare, 325 F.3d at 1083 (internal quotations omitted). "A colorable claim of irreparable harm is one that is not wholly insubstantial, immaterial, or frivolous." Id. (internal quotations omitted). Here, plaintiff claims that, as a result of the allegedly illegal discrimination on the part of the SSA, plaintiff suffered severe stress, anxiety and identifiable psychiatric symptoms requiring additional medical care. These injuries cannot be fully compensated by back payments of benefits. Accordingly, plaintiff has shown irreparable harm.

### 3. Futility

When a plaintiff challenges a "systemwide policy," exhaustion is generally found to be futile because "nothing is gained from permitting the compilation of a detailed factual record, or from agency expertise." Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003); see also Briggs, 886 F.2d at 1140 (finding futility because a detailed record would not "assist a court in determining the merits of appellants' straightforward statutory and constitutional challenge"). Because plaintiff is attempting to overturn SSA policies and regulations that, according to plaintiff, facially violate the Rehabilitation Act and Constitution, a detailed administrative record regarding the facts of plaintiff's individual benefit claim would not assist the court in assessing the merits of plaintiff's contentions. Accordingly, plaintiff has satisfied the futility requirement.

In sum, plaintiff has demonstrated that his Rehabilitation Act claim is sufficiently distinct from his underlying benefits claim such that exhaustion of the benefits claim would not assist in the resolution of his Rehabilitation Act claim. Accordingly, exhaustion of administrative remedies regarding plaintiff's benefits claim is not required for this action to proceed before this court.

### C.  Standing

Regardless of whether exhaustion is required as to plaintiff's individual benefits claim, defendant asserts that plaintiff's ongoing individual proceeding deprives plaintiff of standing to bring this suit. To establish Article III standing, a plaintiff must show that

> (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000). Because plaintiff has at all times relevant to this action continued to receive benefits, defendant claims that plaintiff has not suffered an "injury in fact." Although plaintiff has been assessed an overpayment in excess of $47,000, plaintiff is currently seeking a waiver of that assessment through the SSA, and has submitted paperwork related to that waiver request as recently as December 2006. Def's Exh. 11. If the SSA ultimately grants plaintiff's waiver he will have suffered no monetary injury.

Plaintiff nonetheless claims that he has been harmed by being terminated from the program, in that he suffered stress and anxiety during the period between being notified of his cessation of benefits and the time at which his benefits were reinstated. Plaintiff claims that this stress and anxiety required him to increase the frequency of his therapy appointments and take additional medications to control his psychological symptoms. These psychological problems constitute an "injury in fact" for the purposes of Article III standing. See Situ v. Leavitt, No. C06-2841 THE, 2006 WL 3734373, at *4 (N.D. Cal. Dec. 18, 2006) (Henderson, J.) (holding that "evidence regarding Plaintiffs' actual anxiety and distress" distinguished that case from those involving

11

"hypothetical, speculative or other possible future injuries [that] do not count in the standing calculus") (internal quotations omitted). Accordingly, plaintiff has met the minimum injury requirement to assert standing to bring the instant action. Furthermore, this injury is directly traceable to the alleged discriminatory conduct on the part of the SSA, and it is likely that benefit applicants with mental illness will avoid such stress-related psychiatric problems if plaintiff succeeds in overturning the SSA's practices. Accordingly, plaintiff has established Article III standing.

### D. Mandamus Jurisdiction

In addition to Section 1331, plaintiff claims that this court has subject matter jurisdiction pursuant to 28 U.S.C. section 1361, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is an "extraordinary remedy," and is only available where "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003) (internal quotations omitted).

Although plaintiff requests no specific mandamus relief in his FAC, plaintiff's opposition states that he is seeking a writ to

> 1. Compel Defendant to conduct work reviews of claimants with psychiatric disabilities in a manner which takes into account the impact of their mental/medical condition and thus does not discriminate against them in relation to procedures afforded to claimants without such disabilities, and/or 2. Compel Defendant to have an objective and neutral administrative class action investigation by the U.S. Department of Justice, while this Court retains jurisdiction over the case.

Opp. at 7. In addition to being entirely absent from the complaint, plaintiff's request for relief is plainly beyond the scope of this court's mandamus jurisdiction. Although adequate relief may not be available through the internal procedures at the SSA, plaintiff's claim to relief is far from clear

12

and certain, and the official acts requested are not ministerial. Accordingly, plaintiff may not proceed with his Rehabilitation Act and constitutional claims based on mandamus jurisdiction.

### E. Freedom of Information Act Claims

Federal courts have jurisdiction pursuant to FOIA to enjoin an agency "from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). "Exhaustion of a parties' administrative remedies is required under the FOIA before that party can seek judicial review." In re Steele, 799 F.2d 461, 466 (9th Cir. 1986). "Where no attempt to comply fully with agency procedures has been made, the courts will assert their lack of jurisdiction under the exhaustion doctrine." Id. The SSA has established an appeal process regarding denials of FOIA requests, stating that appeals must be made to the Commissioner of Social Security. 20 C.F.R. § 402.200. Neither plaintiff's complaint nor his opposition makes any showing that plaintiff has fully complied with these procedures. Accordingly, this court lacks subject matter jurisdiction over plaintiff's FOIA claim.

## II. Failure to State a Claim

In addition to his jurisdictional arguments, defendant argues that each of plaintiff's claims must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Due Process Claim

The basis for plaintiff's Due Process claim is that the SSA's deprives plaintiffs of a protected property interest (Social Security benefits) "without adequate notice and an opportunity to be heard." FAC ¶¶ 20–21. Plaintiff provided no further details as to any specific constitutional defects in the SSA claims termination process.

13

1    Defendant asserts that erroneous benefit termination may not give rise to a Due Process
2 claim, and that a pre-termination hearing is not required before benefits may be terminated.
3 Defendant's first argument is based on an overly broad reading of Schweiker v. Chilicky, 487 U.S.
4 412 (1988).  There, the Court addressed the question of "[w]hether a *Bivens* remedy should be
5 implied for alleged due process violations in the denial of social security disability benefits."  Id. at
6 420.  The Court answered in the negative, holding that a plaintiff may not recover monetary
7 damages against a government official for erroneous termination of Social Security benefits.  Id. at
8 429.  This case does not bar suits, such as plaintiffs, which seek to invalidate government policies as
9 unconstitutional.

10    Regarding defendant's second argument, the Supreme Court in Mathews v. Eldridge, 424
11 U.S. 319, 339–340 (1976), squarely held that an evidentiary hearing prior to the termination of
12 Social Security benefits is not constitutionally required.  In response to this argument, plaintiff
13 makes an unconvincing and largely incoherent attempt to distinguish Mathews, essentially arguing
14 that, whatever Mathews may hold regarding the necessity of a pre-termination hearing, the SSA is
15 constitutionally required to consider medical evidence prior to terminating disability benefits.
16 Plaintiff additionally claims that the SSA's own "current available procedures" allow for such
17 consideration, but that the SSA has a "pattern and practice of abuse" in failing to utilize these
18 procedures.  Plaintiff fails to cite any authority suggesting that the failure to consider a particular
19 type of evidence amounts to a Due Process violation.  Plaintiff is essentially requesting a species of
20 pre-termination evidentiary consideration, which falls within the exclusion set forth in Mathews.  In
21 other words, because the Court in Mathews held that no pre-termination evidentiary hearing is
22 required, it follows that no specific type of evidence need be considered prior to termination.
23 Accordingly, plaintiff has failed to plead a cause of action under the Due Process Clause.

25    B.    Rehabilitation Act Claim
26    Plaintiff's Rehabilitation Act claim is based on the allegation that defendant "has failed to
27 equalize the invisible nature of a mental disability as opposed to a physical disability by authorizing

14

1    'low level' claims representatives to cease social security benefits without professional input," and
2    that defendant "has failed and continues to fail to provide Plaintiffs with an equal opportunity to be
3    evaluated using the work review process." FAC ¶¶ 19–20.  Significantly, plaintiff does not allege
4    that the SSA applies different policies or procedures based on whether the recipient is physically
5    disabled or mentally disabled.  Rather, plaintiff asserts that additional protections are necessary for
6    persons with mental disabilities in order to equalize the treatment given to all disabled recipients.  In
7    support of this contention, plaintiff relies on SSA statistics showing that mentally disabled
8    individuals have their benefits terminated based on work reviews at a higher rate than physically
9    disabled recipients.

10   This is exactly the sort of claim that was held to be untenable in Alexander v. Choate, 469
11   U.S. 287 (1985).  There, the plaintiffs challenged a proposed action by the state of Tennessee which
12   reduced the number of days of inpatient hospital care available under the state Medicaid program.
13   Id. at 289.  According to undisputed statistics cited by plaintiffs, "27.4% of all handicapped users of
14   hospital services who received Medicaid required more than 14 days of care, while only 7.8% of
15   nonhandicapped users required more than 14 days of inpatient care." Id. at 289–90.  Based on these
16   statistics, the plaintiffs asserted that the reduction in the number of covered hospital days would
17   violate Section 504 in that the reduction would disproportionately affect handicapped persons.  The
18   Court rejected plaintiffs' claim, holding as follows:

> Section 504 does not require the State to alter this definition of the benefit being offered simply to meet the reality that the handicapped have greater medical needs.  To conclude otherwise would be to find that the Rehabilitation Act requires States to view certain illnesses, *i. e.*, those particularly affecting the handicapped, as more important than others and more worthy of cure through government subsidization.  Nothing in the legislative history of the Act supports such a conclusion.  Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance.  *The Act does not, however, guarantee the handicapped equal results* from the provision of state Medicaid, even assuming some measure of equality of health could be constructed.

26   Id. at 304–305 (emphasis added)(citations omitted).  Accordingly, the fact that the SSA's practice of
27   terminating benefits without considering medical evidence may disproportionately affect mentally ill
28

15

recipients does not, in and of itself, constitute a violation of the Rehabilitation Act.  Hunsaker v. Contra Costa County, 149 F.3d 1041, 1044 (9th Cir. 1998) (holding that, in Rehabilitation Act cases, "disparate impact discrimination is actionable only if it involve[s] a denial of 'meaningful access' to public benefits").  While a medical review might assist the SSA in determining whether mentally ill recipients should have their benefits terminated, this additional step is not legally required by Section 504.  However, since Alexader v. Choate acknowledges that section 504 "reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped", plaintiff is given leave to amend this claim to set forth facts, if he can, that allege mentally disabled persons are denied meaningful access to social security benefits by reason of SSA's policies or procedures, spelling out those policies or procedures.  Alexander v. Choate, 469 at 299.  Accordingly, the Rehabilitation Act claim is dismissed with leave to amend in accordance with the foregoing.

### C. Bad Faith Claims

As discussed above, plaintiff alleges bad faith with respect to defendant's request for clarification of plaintiff's FOIA request.  FAC ¶ 23.  Having found that this court may not assert subject matter jurisdiction over plaintiff's FOIA claim based on failure to exhaust, the court will not consider defendants' attack on the substance of plaintiff's FOIA claim.

As an additional allegation of bad faith, plaintiff claims that defendant's refusal to assign plaintiff's civil rights complaint to another federal agency created a conflict of interest and was done in bad faith.  Id. ¶ 24.  Plaintiff cites no legal theory on which this allegation states a claim for relief, other than his substantive disagreement with the SSA's decision.  To the contrary, the Code of Federal Regulations allows the SSA to process discrimination complaints internally.  See 45 C.F.R. § 85.61 (Department of Health & Human Services ("DHHS") regulation providing for internal processing of discrimination complaints); P.L. 103-269 § 106(b) (providing for the application of DHHS regulations to the SSA).  Accordingly, plaintiff's bad faith allegation fails to state a claim upon which relief can be granted.

### III. Leave to Amend

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality"). Plaintiff is granted leave to amend his Rehabilitation Act claim only, consistent with this order.

### CONCLUSION

For the reasons stated above, the court GRANTS defendant's motion to dismiss for the reasons stated above. Plaintiff is given leave to amend his complaint only insofar as the Rehabilitation Act claim. The amended complaint, if any, shall be filed within twenty (20) days of the date of this order. Defendant shall file its answer or otherwise respond within twenty (20) days of the filing of the amended complaint. .

IT IS SO ORDERED.

Dated: March 30, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# **ENDNOTES**

1. Ill. Council concerned the Medicare Act, but applied Section 405 as incorporated into the Medicare Act. See 42 U.S.C. § 1395ii. The analysis of Section 405 in Ill. Council is therefore fully applicable to claims implicating the Social Security Act.