UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

TERRENCE DAVIS, on behalf of himself and
all others similarly situated,

    Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of
Social Security

    Defendant.
_____/

No. C 06-6108 MHP

**MEMORANDUM AND ORDER**
**Re: Defendant's Motion to Dismiss Second Amended Complaint**

Plaintiff Terrence Davis ("plaintiff") filed this putative class action against the Commissioner of Social Security ("defendant") on September 29, 2006. Plaintiff's Second Amended Complaint ("SAC") alleges a cause of action for violations of Section 504 the Rehabilitation Act of 1973 ("Rehabilitation Act" or "section 504"), violations of the Due Process Clause of the Fifth Amendment, and "Bad Faith." Now before the court is defendant's motion to dismiss this action for failure to comply with this court's previous order, and for failure to state a claim upon which relief can be granted. Having considered the parties' submissions and arguments, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

I.    Allegations in Plaintiff's Second Amended Complaint

Plaintiff is a San Francisco resident suffering from chronic schizophrenia. SAC ¶¶ 1 & 4. In 1985, the Social Security Administration ("SSA") found plaintiff to be disabled due to severe mental disability. Id. ¶ 4. On April 2, 2005 SSA issued to plaintiff a Notice of Disability Cessation based on a "work review," which indicated that plaintiff had been gainfully employed and therefore not entitled to benefits. Id. ¶ 5. SSA determined that plaintiff had not qualified for disability benefits since August 1999, and assessed an overpayment of $66,964. Id. SSA subsequently reduced this assessment to $47,044. Id. Plaintiff asserts that he was not afforded the same procedures provided to people with physical (as opposed to mental) disabilities who are subject to work reviews. Id. ¶ 6. In particular, plaintiff claims that he was not given a comprehensive review by the local field office involving consideration of pertinent factors, and that he was never given a meaningful opportunity to appeal his initial decision before his claims file was sent to SSA's Payment Center in Baltimore, Maryland to be processed for termination. Id. Plaintiff additionally claims that SSA conceded that it had denied plaintiff meaningful access to Social Security benefits when the SAA determined that plaintiff's benefits should not have been terminated. Id. ¶ 8.

Plaintiff purports to represent a class consisting of "all current and future applicants, beneficiaries, and recipients of SSA programs who have disabilities which are primarily mental or invisible and who have made, are making, or in the future, may make attempts to return to work." Id. ¶ 15. According to plaintiff's complaint, SSA systematically terminates the benefits of persons with mental disabilities based on work reviews by failing to apply treatment equal to the treatment given to persons with physical disabilities. Id. ¶¶ 13–29. In particular, plaintiff identifies the following failings on the part of SSA: (1) failing to provide training to Claim Representatives (CRs) regarding mental disorders and anti-psychotic medication that is equivalent to the training provided regarding non-mental disabilities; (2) failing to apply factors equivalent to those for persons with non-mental disabilities before terminating benefits based on work continuing disability review ("work CDR") determinations; and (3) authorizing "low level" CRs to terminate Social Security benefits without seeking professional input. Id. ¶¶ 23–25. Plaintiff asserts that the CRs are bound

by an unlawful internal SSA policy that requires them to apply a "mechanical formula" without taking into account the specific circumstances applicable to a mental health patient. Id. ¶ 28.

Plaintiff claims that this system results in a disparate impact on people with mental disabilities, and that SSA "intentionally and in bad faith" ignores a Congressional mandate forbidding a CR to terminate an individual who has a mental disability without a medical evaluation. Id. ¶¶ 31–32, 36. In support of these claims, plaintiff cites statistical evidence showing that approximately 28.3% of individuals with a disability have a primary mental component, and approximately 45% of these individuals are terminated. Id. ¶ 37. Plaintiff also cites a portion of the Social Security Reform Act of 1984 dealing with the need to review mental impairment claims regardless of whether or not the individual is engaged in substantial gainful employment. Id. ¶ 36. In addition to statutory violations, plaintiff alleges that this system violates the Due Process Clause of the Fifth Amendment by depriving plaintiff of a protected property interest without adequate notice and an opportunity to be heard. Id. ¶ 43.

Finally, plaintiff brings a cause of action titled "Bad Faith," purportedly based on three separate allegations. First, plaintiff claims that during oral argument on defendant's motion to dismiss the First Amended Complaint (FAC), defendant for the first time provided information that establishes a *prima facie* case of noncompliance with applicable regulations. Id. ¶ 45. Second, plaintiff asserts that defendant refused in bad faith to comply with plaintiff's Freedom of Information Act request regarding statistical information. Id. ¶ 46. Third, plaintiff claims that defendant refused in bad faith to assign his case to the Office for Civil Rights or another federal agency rather than using its own general counsel, creating a conflict of interest. Id. ¶ 47.

II.   Procedural History

Plaintiff filed his FAC on November 6, 2006. Defendant moved to dismiss plaintiff's FAC, and the court granted defendant's motion with leave to amend. The court dismissed plaintiff's causes of action under the Due Process Clause, Freedom of Information Act, and "Bad Faith" allegations with prejudice, granting leave to amend only with respect to plaintiff's Rehabilitation

3

Act Claim. Docket Entry 26 (hereinafter "April 2007 Order"). In granting leave to amend, the court instructed that "plaintiff is given leave to amend this claim to set forth facts, if he can, that allege mentally disabled persons are denied meaningful access to social security benefits by reason of SSA's policies or procedures, spelling out those policies or procedures." Id. at 16. Plaintiff filed his SAC on April 23, 2007, providing additional detail with respect to his Rehabilitation Act claim, and re-alleging the factual bases for his previously dismissed Due Process, FOIA and "Bad Faith" claims. Defendant now moves to strike previously dismissed claims that have been re-asserted in the SAC, and to dismiss plaintiff's Rehabilitation Act claim for failure to state a claim upon which relief may be granted.

LEGAL STANDARD

I. Motion to Strike

Under Rule 12(f), a court may strike a pleading—or any portion thereof—that is "redundant, impertinent, or scandalous." Rule 12(f) motions are generally disfavored, and the remedy of striking a pleading is to be used when necessary to discourage parties from raising allegations completely unrelated to the relevant claims and when the interests of justice so require. See Augustus v. Bd. of Pub. Instruction, 306 F.2d 862, 868 (5th Cir.1962); see also Federal Deposit Ins. Corp. v. Niblo, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (noting that Rule 12(f) motions will be granted when necessary to discourage parties from filing "dilatory" pleadings and papers).

II. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by

4

1  attached documents, such documents are deemed part of the complaint and may be considered in
2  evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265,
3  1267 (9th Cir. 1987).
4        A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a
5  claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___ U.S. ____, 127 S. Ct.
6  1955, 1974 (2007). Dismissal can be based on the lack of a cognizable legal theory or the absence
7  of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901
8  F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the
9  light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38
10 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal
11 conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden
12 State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752,
13 754–55 (9th Cir. 1994).

## DISCUSSION

### I.  Motion to Strike

Defendant claims that the majority of plaintiff's SAC does not comply with the April 2007 Order and therefore should be stricken or dismissed. Specifically, the SAC restates claims under the Due Process Clause with an additional factual allegation based on the implementing regulations of the Rehabilitation Act; restates the "Bad Faith" claims with an additional factual allegation related to defense counsel's oral argument in this action; and alleges a new a separate cause of action captioned as "Disparate Impact and/or Intentional Theory."

In response, plaintiff claims that these allegations do not constitute separate causes of action *per se*, but rather are pled to "give a fuller understanding of the case at hand." Opp. at 2. Plaintiff confirms that he is only pursuing a cause of action based on alleged violations of section 504. Id.

The confusion regarding this issue is a result of sloppy drafting on the part of plaintiff's counsel. The complaint is drafted in such a way as to suggest that plaintiff has asserted four separate

5

1   causes of action: "Violation of Section 504 of the Federal Rehabilitation Act of 1973," "Disparate
2   Impact and/or Intentional Theory," "Noncompliance with Regulations Implementing Section 504,"
3   and "Bad Faith." While plaintiff claims that each of these separate sections is merely a separate
4   basis for the asserted Section 504 violation, plaintiff also explicitly claims a violation of the Due
5   Process Clause. To avoid confusion, the portion of the complaint alleging the Due Process violation
6   should be stricken. Accordingly, Paragraph 43 of the SAC is stricken.

7   Regarding plaintiff's re-asserted factual allegations concerning his FOIA request and
8   defendant's refusal to reassign his case, this court previously held that it lacked subject matter
9   jurisdiction over plaintiff's FOIA claim, and that plaintiff's allegations of Bad Faith failed to state a
10  claim upon which relief can be granted under any applicable legal theory. Plaintiff may not now
11  preserve these allegations as theories of a separate claim. Accordingly, Paragraphs 46 and 47 of the
12  SAC are stricken.

13

14  II.     Motion to Dismiss
15          A.      Meaningful Access
16  Setting aside the parties' extensive briefing regarding ancillary issues, the sole issue to be
17  decided regarding defendant's motion to dismiss based on failure to state a claim is whether plaintiff
18  has pled facts "that allege mentally disabled persons are denied meaningful access to social security
19  benefits by reason of SSA's policies or procedures, spelling out those policies or procedures." April
20  2007 Order at 16. Plaintiff's complaint sets forth specific SSA policies and practices that allegedly
21  deny mentally disabled persons meaningful access by failing to adequately account for the particular
22  issues and difficulties faced by persons with mental disabilities. In particular, plaintiff alleges that
23  he was wrongfully denied benefits, and made to suffer additional injuries even after his benefits
24  were restored, due to SSA's failure to adequately evaluate the needs of mentally disabled persons.
25  The Ninth Circuit has held that "meaningful access" under the Rehabilitation Act requires an agency
26  to "consider the particular needs of disabled" persons seeking benefits. Armstrong v. Davis, 275
27  F.3d 849, 862 (9th Cir. 2001). Additionally, the standard may require the agency to make
28

6

"reasonable, but not fundamental or substantial, modifications to its programs." Bird v. Lewis & Clark Coll., 303 F.3d 1015, 1020 (9th Cir. 2002). The question of reasonableness requires a "fact-specific, individualized analysis" based on the circumstances of the case. Id. (internal quotations omitted).

Accordingly, because plaintiff has identified the alleged SSA practices and the purported impact on mentally disabled individuals, the issue of whether SSA's programs deny "meaningful access" is an issue of fact beyond the scope of a Rule 12(b)(6) motion. Defendant's motion must therefore be denied.

### B. The Parties' Additional Contentions

Although plaintiff has sufficiently pled a cause of action under the Rehabilitation Act for denial of meaningful access, the parties raise several other issues which the court will address briefly.

#### 1. Congressional Intent

Defendant asserts that the Social Security Act provides that benefits may be terminated where earnings indicate the ability to perform substantial gainful activity, regardless of medical condition. 42 U.S.C. §§ 421(m)(2)(B), 423(d)(4)(A). Because SSA is not required to consider medical condition at all in the face of evidence related to substantial gainful activity, defendant argues that SSA is not required to consider any differences between physically disabled individuals and mentally disabled persons. Accordingly, defendant argues that the additional training plaintiff seeks in his complaint is inconsistent with the provisions of the Social Security Act. Defendant asserts that this clear congressional mandate cannot be invalidated by the more general provision in the Rehabilitation Act that all individuals be provided with meaningful access. This argument is based on the canon that a "general statutory provision may not be used to nullify or to trump a specific provision, irrespective of the priority of enactment." California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States, 215 F.3d 1005, 1013 (9th Cir. 2000). This argument does

not warrant dismissal of plaintiff's complaint. Indeed, the canon could also be read to apply in the opposite direction—the Social Security Act's general provision that benefits may be terminated without respect to medical condition need not trump the Rehabilitation Act's requirement that the needs of disabled individuals be accounted for in administering public benefits. Defendant's arguments regarding Congress' fervent activity in repeatedly amending the Social Security Act without adding a requirement to consider medical condition in terminations based on substantial gainful activity is likewise not dispositive of the issue before the court.

### 2. Internal Noncompliance

As a separate theory supporting plaintiff's cause of action, plaintiff's SAC alleges that SSA fails to follow its own rules and regulations. In support of this assertion, the SAC cites sections of the Program Operations Manual System (POMS) that, as defendant points out and plaintiff appears to acknowledge, are wholly inapplicable to plaintiff's individual benefit claim and therefore irrelevant to the instant action. SAC ¶ 36. In a cryptic footnote, plaintiff claims that this portion of the complaint does not constitute an exhaustive list of SSA's unlawful methods of administration. Plaintiff additionally cites the lengthiness of the POMS and appears to put the onus on defendant to present examples of unlawful practices through discovery. Because the POMS is a public document setting forth rules and regulations, it is plaintiff's burden to set forth which specific provisions he contends demonstrate that SSA practices are unlawful.

Relatedly, defendant claims that no cause of action may arise from SSA's treatment of plaintiff's own benefits claim because, in processing plaintiff's claim, SSA followed its own internal procedures. These are precisely the procedures that plaintiff alleges are unlawful under the Rehabilitation Act, and defendant's arguments therefore fail. Likewise, the issue of whether plaintiff's asserted injuries amount to a denial of meaningful access is a factual issue and does not warrant dismissal of the complaint.

### 3. Substantial and Gainful Activity

8

Plaintiff argues at length, and quotes extensively from a number of cases and Social Security rulings, regarding the requirement that SSA determine that activity be both "substantial" and "gainful" before terminating benefits. Plaintiff perhaps interprets this standard as requiring a mental health review prior to termination, despite the fact that none of these cases support this conclusion. Rather, the cases speak to the need to establish that activity is "substantial" and "gainful" based on the hours worked and the income earned, independent of medical condition. Accordingly, the court does not consider plaintiff's arguments in this regard; they are entirely irrelevant to the instant motion.

CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss. Paragraphs 43, 46 and 47 of plaintiff's Second Amended Complaint are hereby STRICKEN. Plaintiff's sole cause of action is one for violation of the Rehabilitation Act based on defendant's alleged failure to provide meaningful access to public services.

IT IS SO ORDERED.

Dated: July 17, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California