1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRENCE DAVIS, on behalf of himself and
all others similarly situated,

                  Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

                  Defendant.

_____/

No. C 06-06108 MHP

**MEMORANDUM & ORDER**
**Re: Motions for Leave to Amend Second
Amended Complaint and for Class
Certification**

       Plaintiff Terrence Davis filed this putative class action against the Commissioner of Social Security on September 29, 2006.  On December 19, 2007 Davis filed two motions before the court: 1) a motion seeking leave to file a Proposed Third Amended Complaint ("PTAC"), which would amend the Second Amended Complaint ("SAC"); and 2) a motion for class certification pursuant to Federal Rule of Civil Procedure 23.  These two motions are now before the court.  Having considered the parties' submissions and arguments, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

       Plaintiff Davis is a San Francisco resident suffering from chronic schizophrenia.  PTAC ¶¶ 1, 4.  In 1985 the Social Security Administration ("SSA") found Davis to be disabled due to severe mental disability.  Id., ¶ 4. On April 2, 2004 the SSA issued Davis a Notice of Disability Cessation based on a "work review," which indicated that Davis had been gainfully employed and therefore not

UNITED STATES DISTRICT COURT
For the Northern District of California

1   entitled to social security benefits.  Id., ¶ 5.  SSA determined that Davis had not qualified for

2   disability benefits since August 1999, and assessed an overpayment of $66,964.  Id.  It subsequently

3   reduced this assessment to $47,044.  Id.  SSA also conceded that they incorrectly terminated Davis'

4   benefits.  Id., ¶ 8.  Davis claims that he suffered increased stress and anxiety as a result of this

5   termination process, which required him to increase the frequency of his therapy appointments.[1]  Id.,

6   ¶ 9.

7           Plaintiff asserts that he was not afforded the same procedures provided to people with

8   physical—as opposed to mental—disabilities who are subject to work reviews.  Id.  In particular,

9   plaintiff claims that he was neither given a comprehensive review by the local field office involving

10  consideration of pertinent factors, nor was he given a meaningful opportunity to appeal his initial

11  decision before his claims file was processed for termination.  Id., ¶¶ 2–3.

12          Plaintiff filed his initial complaint on September 29, 2006.  He amended the complaint as a

13  matter of course on November 6, 2006 before defendant had served a responsive pleading.  In the

14  First Amended Complaint ("FAC"), Davis alleged various causes of action, including: 1) violations

15  under the Rehabilitation Act; 2) Fifth Amendment Due Process Clause violations; (3) Freedom of

16  Information Act ("FOIA") violations; and (4) bad faith conduct.  Defendant moved to dismiss for

17  lack of subject matter jurisdiction or, in the alternative, failure to state a claim upon which relief can

18  be granted.  This court granted defendant's motion to dismiss, but granted Davis twenty days in

19  which to amend his complaint.  This court specified that Davis could amend his complaint only as to

20  the Rehabilitation Act claim.  See Docket No. 26.

21          In response to this court's order, Davis filed the SAC on April 23, 2007.  In the SAC, Davis

22  alleged (1) Rehabilitation Act violations and (2) "Bad Faith" claims, including the SSA's failure to

23  comply with a FOIA request.  This court subsequently struck Davis' entire "Bad Faith" claim and

24  held that his "sole cause of action" existed under the Rehabilitation Act.  See Docket No. 42.

25  Defendant then filed an Answer to the SAC on July 30, 2007.

26          On December 19, 2007 Davis filed the PTAC, which seeks to make three additions to the

27  SAC.  First, Davis seeks to join John Doe[2] ("proposed plaintiff Doe") and Timothy Gibler ("proposed

28

2

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  plaintiff Gibler") as additional named plaintiffs.  Proposed plaintiffs Doe and Gibler are residents of

2  San Francisco who have received SSA benefits as a result of their mental disabilities.  PTAC ¶¶ 1, 10,

3  15, 22, 24.  Davis alleges that both proposed plaintiffs could not join this lawsuit sooner because they

4  have difficulties making decisions due to their mental disabilities.  Id., ¶¶ 14, 23.  Like Davis,

5  proposed plaintiffs Doe and Gibler stopped receiving SSA benefits as a result of SSA work reviews.

6  Id., ¶¶ 19, 29.

7       Second, Davis re-alleges at least four violations of the Rehabilitation Act that were previously

8  claimed in the SAC and newly alleges at least three additional Rehabilitation Act claims.

9  Specifically, plaintiff newly alleges that the SSA violates the Rehabilitation Act by: 1) failing to send

10  notice of benefits termination to a mentally disabled beneficiary's designated contact person;

11  2) ignoring and failing to expand SSA policies and procedures to increase equal access; and 3) failing

12  to provide a claims representative ("CR") trained in communicating with mentally disabled

13  beneficiaries in each field office.  Id., ¶¶ 57–64.

14       Third, Davis seeks to amend the SAC to include two FOIA claims: 1) a claim that was

15  previously dismissed by this court, arguing that the SSA wrongfully refused to satisfy a FOIA request

16  for statistical analysis of SSA practices, id., ¶ 66; Docket No. 26; and 2) a new claim contending that

17  the SSA has also violated FOIA by refusing to turn over independent investigative reports relating to

18  the plaintiff's class action complaints, PTAC ¶ 67.

19       In addition to seeking leave to amend the complaint, Davis has filed for class certification.

20  Davis purports to represent a class consisting of "[a]ll current and future applicants, beneficiaries, and

21  recipients of SSA program benefits who have disabilities which are primarily mental (invisible) and

22  who have made, are making, or in the future may make attempts to work in the national economy."

23  Motion to Certify at 9.  According to plaintiff, this class definition is appropriate because SSA

24  systematically terminates the benefits of persons with mental disabilities based on work reviews by

25  failing to apply treatment equal to the treatment given to persons with physical disabilities.  Id. at

26  4–11.  In particular, plaintiff identifies the following failings on the part of SSA: 1) failing to provide

27  training to CRs regarding mental disorders and anti-psychotic medication that is equivalent to the

28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1   training provided regarding non-mental disabilities; 2) failing to apply factors to persons with mental

2   disabilities equivalent to those for persons with non-mental disabilities before terminating benefits

3   based on work continuing disability review ("work CDR") determinations; and 3) authorizing "low

4   level" CRs to terminate Social Security benefits without seeking professional input.  Id. at 6–7.

5   Plaintiff asserts that the CRs are bound by an unlawful internal SSA policy that requires them to

6   apply a "mechanical formula" without taking into account the specific circumstances applicable to a

7   mental health patient.  Id.

8          The court first discusses the PTAC followed by the motion for class certification.

9

10          MOTION FOR LEAVE TO AMEND SECOND AMENDED COMPLAINT

11   STANDARD OF REVIEW

12          A party may amend a pleading once as a matter of course and thereafter may only amend the

13   complaint by consent of the opposing party or leave of the court.  Fed. R. Civ. P. 15(a).  The federal

14   rules require that "the court should freely give leave when justice so requires."  Id.  However, a

15   court's decision to grant leave to amend is ultimately discretionary.  Zenith Radio Corp. v. Hazeltine

16   Research, Inc., 401 U.S. 321, 330 (1971); Cal. Dep't of Toxic Substances Control v. Neville Chem.

17   Corp., 358 F.3d 661, 673 (9th Cir. 2004).  This discretion is particularly broad where the court has

18   previously granted leave to amend the complaint.  Allen v. City of Beverly Hills, 911 F.2d 367, 373

19   (9th Cir. 1990) (finding it "implausible to suggest that justice somehow requires" the court to grant

20   leave to amend the complaint for the third time); accord Forman v. Davis, 371 U.S. 178, 182 (1962)

21   (noting that a motion for leave to amend may be denied where the trial court finds a "repeated failure

22   to cure deficiencies by amendments previously allowed.").

23          The Ninth Circuit uses five factors to determine when a trial court should grant leave to

24   amend a complaint: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of

25   amendment, and (5) whether plaintiff has previously amended his complaint."  Allen, 911 F.2d at 373

26   (citation omitted); accord Forman, 371 U.S. at 182.  However, these factors need not all be

27   considered in each case.  The third factor, prejudice to the opposing party, is the "touchstone of the

28

4

1    inquiry under rule 15(a)." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir.

2    2003) (citations omitted).  A court may also be persuaded to deny leave under only the fifth factor,

3    consideration of previous amendments, "when the movant present[s] no new facts but only new

4    theories and provide[s] no satisfactory explanation for his failure to fully develop his contentions

5    originally." <u>Allen</u>, 911 F.2d at 374 (citations omitted).

6

7    <u>DISCUSSION</u>

8         Plaintiff Davis seeks to amend the SAC in three distinct ways: 1) adding two additional

9    named plaintiffs; 2) expanding claims previously alleged under Section 504 of the Rehabilitation Act

10   ("Section 504"); and 3) expanding previously dismissed FOIA claims.  Each of these categories of

11   amendments is considered in turn.

12

13   I.    The Addition of Two Named Plaintiffs

14        Davis argues that justice requires this court to grant leave to amend the complaint to add

15   proposed plaintiffs Doe and Gibler for two reasons.  First, adding these plaintiffs will decrease the

16   risk of delay in the event that Davis becomes unable to effectively participate with his counsel.

17   Second, the addition will allow the complaint to more accurately reflect the variety of experiences of

18   mentally disabled people.  Davis attempts to excuse his delay by arguing that proposed plaintiffs Doe

19   and Gibler could not be added earlier because these proposed plaintiffs needed additional time to

20   decide whether to participate as a result of their mental disabilities.  PTAC ¶¶ 14, 23.

21        Davis presents a legitimate concern that he may become incapable of effectively participating

22   with counsel due to his mental disability, which causes episodic and unpredictable periods of

23   decompensation.  This condition may disrupt the course of litigation.  However, Davis' proposed

24   solution—the addition of other plaintiffs who also suffer from episodic and unpredictable periods of

25   decompensation—does not remedy the potential problem of delay.  The addition of proposed

26   plaintiffs Doe and Gibler is not likely to avoid delay when contact with the SSA triggers anxiety and

27   distress in both proposed plaintiffs, making decompensation more likely.[3]  PTAC ¶¶ 21, 31.  Further,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   as even Davis points out, this court already has a mechanism to avoid delay in the event of his

2   decompensation; if necessary, this court may at any time appoint a guardian ad litem to protect

3   plaintiff's interests.  See Fed. R. Civ. P. 17(c).  The currently unmanifested threat of delay is

4   therefore both premature and unpersuasive to convince this court that justice requires the addition of

5   the proposed plaintiffs at this juncture.

6          Davis next contends that these two proposed plaintiffs better reflect the varied experiences of

7   the mentally disabled.  In his initial complaint, Davis asserted that at least one million people with

8   mental disabilities are eligible to participate in this lawsuit.  Compl. ¶ 11.  However, he only now

9   expresses the theory that the experiences of additional named plaintiffs are necessary to accurately

10  reflect the experiences of the proposed class.  Proposed plaintiffs Doe and Gibler's need for

11  additional time may explain why these particular proposed plaintiffs could not decide until recently if

12  they wanted to join the lawsuit.  Yet, the needs of these particular proposed plaintiffs do not explain

13  Davis' failure to initially file with other representative parties or his late assertion that additional

14  named plaintiffs are necessary.  Davis thus provides "no new facts but only new theories" and has

15  failed to provide the necessary "satisfactory explanation for his failure to fully develop his

16  contentions originally." Allen, 911 F.2d at 374 (citations omitted).

17         Given that Davis has had two prior opportunities to amend his complaint and that additional

18  plaintiffs are unnecessary to advance the underlying Rehabilitation Act claim, justice does not require

19  the addition of the proposed plaintiffs.

20

21  II.     The Addition of Expanded Claims Under Section 504

22         Davis introduces a variety of new claims under Section 504.  A non-exhaustive list of these

23  claims includes allegations that the SSA violates the Rehabilitation Act by: 1) failing to send notice

24  of benefits termination to a mentally disabled beneficiary's designated contact person; 2) ignoring

25  and failing to expand SSA policies and procedures to increase equal access for the mentally disabled;

26  and 3) failing to provide a CR trained in communicating with mentally disabled beneficiaries in each

27  field office.  PTAC ¶¶ 57–64.  Davis argues that these additions are reasonable because he is

28

6

attempting to follow this court's April 3, 2007 order to "set forth facts . . . that allege mentally disabled persons are denied meaningful access to social security benefits by reasons of SSA's policies or procedures, spelling out those policies or procedures." Docket No. 26 at 16.  Davis further contends that this court should grant leave to amend because he raises no new legal theories—only further support for previously alleged theories.

Davis' undue delay and the fact that he has twice previously amended his complaint weigh against granting leave.[4]  Allen, 911 F.2d at 373; accord Forman v. Davis, 371 U.S. at 182.  Davis' repeated amendments to the complaint require the SSA to expend time and resources in drafting responses.  These required outlays prejudice the SSA and therefore weigh against granting leave to amend.  Allen, 911 F.2d at 373.  In addition, Davis cannot excuse his dilatory assertion of the Section 504 claims found in the TAC by pointing to this court's April 3, 2007 order seeking greater specificity.  At that time, this court granted Davis twenty days leave to amend his complaint.  Davis' submission of the PTAC a full 259 days later fails to comport with the letter and the spirit of the court's twenty-day leave to amend.  The April 3, 2007 order gave plaintiff one opportunity—which he took, timely submitting the SAC on April 23, 2007—to specify his Section 504 claims.  Plaintiff will not now be permitted a fourth bite at the same apple.[5]  See Allen, 911 F.2d at 373 (finding it "implausible to suggest that justice somehow requires" the court to grant leave to amend the complaint for the third time when no new legal theories were alleged).

III.    The Addition of FOIA Claims

Davis argues that defendant violated the FOIA by wrongfully failing to produce statistical analysis and independent investigative reports related to Davis' lawsuit.  Davis had previously asserted the statistical analysis claim, but at that time he had not exhausted administrative remedies and, as a result, this court dismissed the claim for lack of subject matter jurisdiction.  Docket No. 26 at 13.  Davis has now exhausted the administrative remedies related to both FOIA claims now before the court.  Pl.'s Exhs. 11, 12.

Defendant argues that these FOIA claims must be dismissed because the amendments will

UNITED STATES DISTRICT COURT
For the Northern District of California

1    prove futile upon later examination by the court.  <u>Allen</u>, 911 F.2d at 373 (holding that futility

2    supports a court's decision to deny a motion for leave to amend).  An amendment is futile if it will be

3    subject to dismissal or summary judgment.  <u>Cal. Dep't of Toxic Substances Control</u>, 358 F.3d at 661;

4    <u>Saul v. United States</u>, 928 F.2d 829, 843 (9th Cir. 1991).  Specifically, defendant argues that the

5    FOIA claims are futile because: 1) the court lacks jurisdiction; 2) SSA properly withheld the

6    documents; and 3) FOIA claims are not amenable to class prosecution.

7

8           A.    <u>Jurisdiction</u>

9           Defendant contends that federal court jurisdiction over a FOIA claim exists only when a party

10   has exhausted administrative remedies *prior* to filing suit.  <u>See</u> <u>In re Steele</u>, 799 F.2d 461, 466 (9th

11   Cir. 1986); <u>Barch v. Hawaii Dep't of Labor & Indus. Relations</u>, No. 04-00712 SOM/BMK, 2006 WL

12   3078933, at *11 (D. Hi. Oct. 26, 2006).

13          Neither precedent nor policy support the SSA's rigid interpretation of the law.  In <u>Steele</u>, the

14   court dismissed plaintiffs' FOIA claims for lack of jurisdiction because, even on appeal, plaintiffs had

15   failed to exhaust administrative remedies.  799 F.2d at 466.  The court held that jurisdiction is absent

16   "where no attempt to comply fully with agency procedures has been made."  <u>Id.</u>  Such is not the case

17   here, as plaintiff Davis has now exhausted the administrative remedies related to his FOIA claims.

18          Defendant also relies on the District of Hawaii's holding in <u>Barch</u>, which dismissed a FOIA

19   claim for lack of jurisdiction when plaintiffs exhausted administrative remedies after filing suit.

20   Notably, however, <u>Barch</u> dismissed the FOIA claims without prejudice and granted plaintiffs leave to

21   file another complaint.  2006 WL 3078933, at *11.  Such a circuitous ruling is unnecessary at present.

22   Dismissal without prejudice and with the expectation that Davis would re-file his FOIA claims would

23   be a needless waste of judicial resources.  Consequently, the rationale in <u>Barch</u> is unpersuasive.

24

25          B.    <u>Documents Properly Withheld</u>

26          Defendant next argues that inclusion of the FOIA claims in the TAC is futile because the SSA

27   properly withheld requested documents on the basis of attorney-client and work-product privileges.  5

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   U.S.C. § 552(b)(5).  The pleadings and motions, however, contain no support for this allegation.

2   Therefore, futility has not been shown because defendant has failed to prove that FOIA claims will be

3   subject to dismissal or summary judgment.  See Cal. Dep't of Toxic Substances Control, 358 F.3d at

4   661; Saul, 928 F.2d at 843.

5

6           C.      FOIA Claims and Class Prosecution

7           Finally, defendant contends that FOIA amendments are futile because FOIA claims are not

8   amenable to class prosecution.  Defendant's sole support for this broad assertion is a non-binding

9   decision that did not concern FOIA claims.  See Kennecott Utah Copper Corp. v. U.S. Dept. of the

10  Interior, 88 F.3d 1191 (D.C. Cir. 1996).  Given that the Ninth Circuit has considered FOIA claims in

11  the context of a class prosecution, the court is not persuaded that granting class certification will

12  render Davis' FOIA amendments futile.  See, e.g., Andrew v. Bowen, 837 F.2d 875 (9th Cir. 1988)

13  (concerning a class action suit filed under the FOIA).

14

15          D.      Summary

16          In addition to futility, Allen directs the court to consider: 1) bad faith; 2) undue delay; 3)

17  prejudice to the opposing party; and 4) previous amendments to the complaint.  911 F.2d at 373.

18  Given that none of defendant's three futility arguments is persuasive, the court now turns to the other

19  factors set out in Allen to determine if it should grant leave to amend the SAC.

20          Davis could not earlier amend the complaint to include the FOIA claims because the court

21  lacked subject matter jurisdiction before Davis had exhausted his administrative remedies.  Docket

22  No. 26 at 13.  Plaintiff timely pursued and exhausted these required administrative remedies before

23  submitting the PTAC.  See Pl.'s Exhs. 11, 12.  As a result, the court finds no evidence of bad faith or

24  undue delay.  Prejudice to the SSA, however, is likely to result because granting leave to amend will

25  require defendant to commit time and resources in order to draft a response.  However, this prejudice

26  appears unavoidable in light of the expectation that Davis will re-file his FOIA claims if the court

27  denies his motion to amend the complaint.

28

9

1    In light of the other <u>Allen</u> factors, Davis' previous amendments to the complaint alone do not

2    weigh against granting leave to amend the FOIA claims in the instant scenario.  As a result, the court

3    GRANTS Davis' motion for leave to amend with respect to his FOIA claims only.

4

5                          <u>MOTION FOR CLASS CERTIFICATION</u>

6    <u>STANDARD OF REVIEW</u>

7    To certify a class, the four prerequisites enumerated in Rule 23(a) must be satisfied, as well as

8    at least one of the requirements of Rule 23(b).  Fed. R. Civ. P. 23.  Under Rule 23(a), the party

9    seeking class certification must establish: 1) that the class is so large that joinder of all members is

10   impracticable ("numerosity"); 2) that there are one or more questions of law or fact common to the

11   class ("commonality"); 3) that the named parties' claims are typical of the class ("typicality"); and

12   4) that the class representatives will fairly and adequately protect the interests of other members of

13   the class ("adequacy of representation").  Fed. R. Civ. P. 23(a).  In addition to the explicit

14   requirements set out by Rule 23(a), the class definition must set forth a class which is ascertainable

15   and clearly identifiable.  <u>Lamumba Corp. v. City of Oakland</u>, No. 05-2712, 2007 WL 3245282 (N.D.

16   Cal. Nov. 2, 2007) (Patel, J.).  Finally, a party seeking class certification must also show that one of

17   Rule 23(b)'s provisions apply.  Fed. R. Civ. P. 23(b); <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S.

18   591, 614 (1997).

19   The party seeking class certification bears the burden of establishing that the requirements of

20   Rule 23(a) and (b) have been met.  <u>Zinser v. Accufix Research Inst.</u>, 253 F.3d 1180, 1186 (9th Cir.

21   2001), <u>amended by</u> 273 F.3d 1266 (9th Cir. 2001) (citing <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d

22   497, 508 (9th Cir. 1992)).  When adjudicating a motion for class certification, the court accepts the

23   allegations in the complaint as true so long as those allegations are sufficiently specific to permit an

24   informed assessment as to whether the requirements of Rule 23 have been satisfied.  <u>Blackie v.</u>

25   <u>Barrack</u>, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  The merits of the class members' substantive claims

26   are generally irrelevant to this inquiry.  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177–78 (1974);

27   <u>see also</u> <u>Moore v. Hughes Helicopters, Inc.</u>, 708 F.2d 475, 480 (9th Cir. 1983).  However, courts may

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

10

"consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." Hanon, 976 F.2d at 509 (citing In re Unioil Sec. Litig., 107 F.R.D. 615, 618 (C.D. Cal. 1985)); see also Moore, 708 F.2d at 480 ("some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), . . . .").

DISCUSSION

I.     Rule 23(a) Class Certification Requirements

       A.     Certainty

       Apart from the explicit requirements of Rule 23(a), "[a]n implied prerequisite to certification is that the class must be sufficiently definite." Whiteway v. FedEx Kinko's Office & Print Servs., Inc., No. C 05-2320 SBA, 2006 WL 2642528, at *3 (N.D. Cal. Sep. 14, 2006) (Armstrong, J.). The class definition must set forth a class which is ascertainable and clearly identifiable. Oshana, 472 F.3d at 513 (citing Alliance, 565 F.2d at 977). A defined class "should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted).

       Plaintiff seeks to certify the following class: "[a]ll current and future applicants, beneficiaries, and recipients of SSA program benefits who have disabilities which are primarily mental (invisible) and who have made, are making, or in the future may make attempts to work in the national economy." Motion to Certify at 9. Defendant asserts a number of deficiencies in the class definition, including: 1) a lack of precision regarding terms in the class definition; 2) a lack of precision regarding the term "SSA programs;" 3) uncertainty resulting from including future beneficiaries; 4) uncertainty regarding whether children are included in the class; and 5) problems with including derivative beneficiaries. Each is discussed in turn.

       First, defendant asserts that a number of the terms in the class definition are vague. Yet, SSA has formulated definitions which could easily apply to many of the terms in the class definition.

11

1    See, e.g., 20 C.F.R. § 404.1505(a) (defining "disability"); id. § 404, Subpt. P, App. 1 at 12.00 (listing

2    nine categories of mental disorders); id. §§ 404.1571 et. seq. (discussing work and required

3    substantial gainful activity requirement).

4          Second, defendant asserts that "SSA programs" is vague.  However, plaintiff's SAC implicitly

5    indicates that the SSA programs at issue in this litigation include those providing benefits under

6    "Title II and/or Title XVI."  SAC at 4.  Additionally, given the entirety of the class definition, the

7    class of people who are allegedly discriminated against by SSA are readily identifiable.  The class

8    consists of current and future SSA program beneficiaries with primarily mental disabilities who have

9    made or will make attempts to work.

10          Third, defendant asserts that future beneficiaries may not properly be included in the class

11   because that creates uncertainty.  Plaintiff contends that courts consistently certify classes that look to

12   future members, citing Sullivan v. Zebley, 493 U.S. 521 (1990), Califano v. Yamasaki, 442 U.S. 682

13   (1979), and Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001).  While defendant is correct that

14   including future beneficiaries in the class creates uncertainty as to members of the class, "the class

15   need not be so ascertainable that every potential member can be identified at the commencement of

16   the action."  O'Connor, 184 F.R.D. at 319 (internal quotations omitted).  Moreover, because plaintiff

17   is challenging SSA policies and procedures regarding mentally disabled beneficiaries, this is a facial

18   challenge to defendant's conduct, not an as-applied challenge.  Therefore, the class may properly

19   include future beneficiaries.  See Armstrong, 275 F.3d at 856–57 (affirming class certification based

20   on Rehabilitation Act claims where class was defined as "all present and future California state

21   prisoners and parolees with" certain disabilities).

22          Fourth, defendant argues that it is unclear whether disabled children are included in the class.

23   Children can qualify for SSI benefits, and if a disabled child does not currently qualify, but may later,

24   the child could be a future beneficiary.  As such, disabled children could be included in the class if

25   the rest of the requirements are met.  Defendant cites to Lamumba, 2007 WL 3245282, in support of

26   its argument regarding beneficiaries making future attempts to work.  That case in inapposite,

27   however, because this court rejected the class definition there because it involved the subjective state

28

12

1  of mind of the potential class members.  The phrase "in the future may make attempts to work" does

2  not base inclusion on the subjective state of mind of the class member.

3        Finally, defendant asserts that derivative beneficiaries could be included in the class

4  definition.  This argument has merit because plaintiff's class definition fails to link the class

5  member's status as a SSA beneficiary to the member having a mental disability.  Without this link,

6  the class includes SSA beneficiaries who have a mental disability but are not an SSA beneficiary for

7  that reason.  The class definition requires modification in this respect.  The modification is

8  straightforward and the class can be defined as: "[a]ll current and future recipients of SSA benefits,

9  who receive benefits based on a primarily mental (invisible) disability, and who have made, are

10 making, or in the future may make attempts to work in the national economy."

11       In sum, this requirement is met.

12

13       B.      Numerosity

14       Pursuant to Rule 23, the class must be "so numerous that joinder of all members is

15 impracticable."  Fed. R. Civ. P. 23(a)(1).  As a general rule, classes numbering greater than 41

16 individuals satisfy the numerosity requirement.  See 5 James Wm. Moore et al., Moore's Federal

17 Practice § 23.22[1][b] (3d ed. 2004).  Although plaintiff need not allege the exact number or identity

18 of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties

19 involved is not sufficient.  See Freedman v. Louisiana-Pac. Corp., 922 F. Supp. 377, 398 (D. Or.

20 1996); 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1762 (3d ed. 1995).  The plaintiff

21 "must proffer evidence of the number of members in the purported class, or at least a reasonable

22 estimate of that number."  5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3] (3d ed.

23 2004).

24       Plaintiff alleges that the defined class includes over one million class members.  Additionally,

25 plaintiff asserts that because the class includes future beneficiaries who may attempt to work, the

26 class is so numerous that joinder of all members is impracticable.  Defendant responds by arguing

27 that the statistics plaintiff uses to arrive at over one million class members are not sufficiently linked

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   to the proposed class.  Specifically, plaintiff relies on the SSA's Annual Statistical Report on Social

2   Security Disability Insurance ("SSDI") Program from 2006 for evidence of the size of the proposed

3   class.  This report shows that in 2006 there were 1,947,274 disabled people with mental disorders

4   other than retardation receiving SSDI benefits.  See Dkt. No. 57, Exh. 9.  Plaintiff also alleges that

5   the class size actually exceeds this number because it does not include purely SSI beneficiaries with

6   mental disorders.

7        As defendant points out, this general evidence is speculative.  First, plaintiff fails to put forth

8   evidence regarding the number of mentally disabled SSA program beneficiaries who have made or

9   are making attempts to work in the national economy.  In other words, the court has no evidence

10  regarding what percentage of the 1,947,274 mentally disabled SSDI beneficiaries have attempted or

11  are attempting to work.  Additionally, the relevant class of potential plaintiffs is still a subset of the

12  unidentified percentage noted above because the relevant beneficiaries must not only attempt to work,

13  but must also be subject to CDRs that would result in a "Notice of Disability Cessation."  Plaintiff

14  has not established who is subject to CDRs, nor when these reviews result in a "Notice of Disability

15  Cessation."  As a result, the court cannot currently ascertain an approximate number for the potential

16  size of the proposed class.

17       However, given the sheer volume of SSDI beneficiaries with mental disabilities, not to

18  mention SSI beneficiaries, it is hard to contemplate that there are not at least forty-one people who

19  meet the definition.  See e.g. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483

20  (2d Cir. 1995); see also Jordan v. Los Angeles County, 669 F.2d 1311, 1319–20 n.9, n.10

21  (9th Cir. 1982) (collecting cases on numerosity requirements), rev'd on other grounds,

22  459 U.S. 810 (1982).  Consequently, plaintiff should be able to meet this requirement with further

23  evidence.  At this time, however, plaintiff has failed to put forth non-speculative evidence of the

24  number of members included in the proposed class.  The statistical evidence plaintiff has put forth is

25  deficient because it fails to create a general idea of the size of the class.  In sum, this requirement has

26  not been met.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1    C.    Commonality

2         To fulfill the commonality prong, plaintiff must establish that there are questions of law or

3    fact common to the class as a whole.  Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) does not mandate that

4    each member of the class be identically situated, only that there be substantial questions of law or fact

5    common to all.  Harris v. Palm Spring Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964).

6    Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal

7    commonality because "the existence of shared legal issues with divergent factual predicates is

8    sufficient" to satisfy Rule 23.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

9         Defendant asserts that this action requires individualized determinations based on the specific

10   disabilities of each potential class member.  Defendant claims that the allegations in this action are

11   different from those in which a uniform response could be derived because "meaningful access" is an

12   inquiry that must look at each individual's level of or lack of access.  Opp. at 8–9.

13        Plaintiff, however, brought this action as a facial challenge to the SSA's policies and

14   procedures surrounding determinations of "substantial gainful work activity" and benefits

15   terminations for mentally disabled beneficiaries.  Plaintiff asserts that SSA's policies and procedures

16   in making these determinations result in violations of the Rehabilitation Act.  Defendant's arguments

17   that "meaningful access" under the Rehabilitation Act must be determined on a case-by-case basis are

18   inapposite because plaintiff is not asserting that the individual application of the policies is in

19   violation.

20        Both parties cite Armstrong, 275 F.3d 849, for their respective positions.  In Armstrong,

21   numerous disabled prisoners and parolees brought suit against the State of California alleging

22   discrimination and violations of the Rehabilitation Act during parole and parole revocation hearings.

23   Id. at 854.  The plaintiff class comprised six different categories of disabilities, including mobility

24   impairments, learning disabilities and mental retardation.  Id.  After the district court held that the

25   defendants engaged in systematic and widespread discrimination, the Ninth Circuit affirmed the class

26   certification and system-wide injunction.  Id.  The State argued that the diversity of disabilities

27

28

15

1   represented in the class precluded a finding of commonality.  Id. at 868.  In rejecting this argument,

2   the Ninth Circuit held:

> We reject this approach to class-action litigation. We have previously held, in a civil-rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.  In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality.  Certainly, the differences that exist here do not justify requiring groups of persons with different disabilities, all of whom suffer similar harm from the Board's failure to accommodate their disabilities, to prosecute separate actions. The commonality requirement is met.

Id. at 868 (internal citations omitted); see also Lancaster v. Tilton, No. C 79-01630, 2006 WL

2850015, at *8 (N.D. Cal. Oct. 4, 2006) (Alsup, J.) (holding that in a challenge to a discriminatory

prison policy, the "differing effects that a single policy have on different [plaintiffs] is not sufficient

to defeat the assertion of common questions of law or fact"); Situ v. Leavitt, 240 F.R.D. 551, 560

(N.D. Cal. 2007) (Henderson, J.) (holding that commonality existed because plaintiff class claimed

that Secretary of Health and Human Services "failed to comply with his obligations regarding

implementation of" Medicare programs).

     Like Armstrong, plaintiff and his proposed class allegedly suffer a denial of "meaningful

access" that directly results from policies instituted by SSA.  While defendant is correct that the

individuals in the proposed class have unique medical conditions that would impact the type of

individualized response required by Section 504, that response is outside the scope of what plaintiff

seeks from this action.  Plaintiff seeks a declaratory judgment and injunctive relief regarding

defendant's policies that allegedly violate Section 504 and discriminate against mentally disabled

beneficiaries.

     In the instant action, this court previously stated:

> The Ninth Circuit has held that "meaningful access" under the Rehabilitation Act requires an agency to "consider the particular needs of disabled" persons seeking benefits.  Additionally, the standard may require the agency to make "reasonable, but not fundamental or substantial, modifications to its programs."  The question of reasonableness requires a "fact-specific, individualized analysis" based on the circumstances of the case.

Docket No. 42 at 6–7 (internal citations omitted).  Defendant argues that this language demonstrates

that a showing of disparate treatment between physically and mentally disabled beneficiaries

UNITED STATES DISTRICT COURT
For the Northern District of California

16

1   necessarily requires an individualized determination.  However, the individualized determination

2   referenced by this court is one that the agency, SSA, is required to make under the Rehabilitation Act

3   in considering the particular needs of its beneficiaries.  This court need not make any individualized

4   determinations.

5       A contrary holding here would essentially preclude a plaintiff from bringing any class action

6   under the Rehabilitation Act.  Yet, courts have held that class actions under the Rehabilitation Act are

7   appropriate.  See, e.g., Alexander v. Choate, 469 U.S. 287 (1985) (holding that reduction of inpatient

8   coverage for class of Medicaid recipients did not violate Rehabilitation Act without questioning

9   propriety of class action under Rehabilitation Act); Armstrong, 275 F.3d 849 (holding that

10  requirements for class certification were met and remanding to district court so plaintiffs could add

11  class representatives for certain disabled groups that were missing); see generally Califano,

12  442 U.S. 682 (holding that class actions were appropriate in actions brought under Social Security

13  Act, with reasoning applicable to Rehabilitation Act claims based on Social Security benefits).

14      Further, differences in damages or remedy do not preclude a finding of commonality because

15  these cases turn on "questions of law applicable in the same manner to each member of the class."

16  Califano, 442 U.S. at 701; see also Hanlon, 150 F.3d 1011.  In Califano, the Secretary of Health,

17  Education, and Welfare had determined that SSA beneficiaries had been overpaid and was seeking

18  recoupment of these overpayments.  442 U.S. at 684.  In relevant part, the Supreme Court held that

19  class relief was "peculiarly appropriate" for claims where the issues involved are common to the class

20  and turn on questions of law applicable in the same manner to each member of the class.  Id. at 701.

21  The Court further found it "unlikely that differences in the factual background of each claim will

22  affect the outcome of the legal issue."  Id.  This comports with this court's analysis, supra, under

23  Armstrong and the related "individualized determinations" argument put forth by defendant.

24      Finally, defendant argues that the fact that SSA does not use medical evidence in work-based

25  CDRs cannot create commonality.  In this action, this court previously stated:

26          The fact that the SSA's practice of terminating benefits without considering medical
            evidence may disproportionately affect mentally ill recipients does not, in and of
27          itself, constitute a violation of the Rehabilitation Act.  While a medical review might
            assist the SSA in determining whether mentally ill recipients should have their

28

17

benefits terminated, this additional step is not legally required by Section 504. However, since <u>Alexander v. Choate</u> acknowledges that section 504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped, plaintiff is given leave to amend this claim to set forth facts, if he can, that allege mentally disabled persons are denied meaningful access to social security benefits by reason of SSA's policies or procedures, spelling out those policies or procedures.

Docket No. 26 at 15–16. Although Section 504 does not legally require medical reviews, it does require SSA to make individualized determinations, as described above. Medical reviews may be part and parcel of the required individualized determinations.[6] However, this has no effect on the common questions of law and fact that exist among the plaintiff class. In sum, because plaintiff has brought this action as a facial attack to the policies SSA has implemented regarding CDRs for mentally disabled beneficiaries, common questions of law and fact exist.


D.    <u>Typicality</u>

Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims of the class. To be considered typical for purposes of class certification, the named plaintiff need not have suffered a substantially identical wrong. <u>Hanlon</u>, 150 F.3d at 1020. Rather, the claims of the putative class must be "fairly encompassed by the named plaintiff's claims." <u>Falcon</u>, 457 U.S. at 156 (internal quotation omitted). The Ninth Circuit has held that "[w]here the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality, although the emphasis may be different." <u>Armstrong</u>, 275 F.3d at 868–69.

Plaintiff argues that his claims are typical of the class because the manner in which SSA conducts work reviews for beneficiaries with primarily mental disabilities is the same for all class members. Defendant argues that plaintiff's claims are not typical because: 1) plaintiff does not take advantage of SSA's representative payee system, which would vitiate the alleged stress and injury caused by receipt of SSA mail, and because plaintiff had sufficient earnings to trigger a work CDR; and 2) plaintiff resides in San Francisco and seeks to certify a nationwide class without showing that plaintiff's experiences are typical outside of the San Francisco district SSA office.

18

1    Armstrong is again instructive.  With regard to the typicality inquiry, the court stated that

2    "[w]here the challenged conduct is a policy or practice that affects all class members . . . the

3    typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs

4    with those of the rest of the class."  Armstrong, 275 F.3d at 868–69.  The injuries need not be

5    identical.  Id. at 869.  The plaintiffs in Armstrong all suffered identical injuries resulting from a

6    failure to be given accommodations as required by statute and from being objects of discriminatory

7    treatment because of their disabilities.  Id.  Although the plaintiff class included numerous different

8    types of disabilities which resulted in differences in the specific injury suffered, the Ninth Circuit

9    held that these differences were inconsequential to the typicality analysis because "the unnamed class

10   members ha[d] injuries similar to those of the named plaintiffs and that the injuries result from the

11   same, injurious course of conduct."  Id.

12       Similarly, plaintiff in the instant action alleges a discriminatory and illegal course of conduct

13   by the SSA—systematically failing to accommodate people with mental disabilities through

14   mechanical application of a formula to assess ongoing qualification for benefits under a CDR process

15   and ignoring medical evidence of chronic mental disabilities.  Consequently, Davis' alleged unique

16   experience with the SSA does not defeat class certification.  Moreover, and contrary to defendant's

17   arguments, individualized determinations would not come into play in the injury analysis in the

18   instant action for all of the same reasons such determinations do not preclude certification under the

19   commonality requirement.

20       Second, as a federal agency, SSA's policies are nationwide in scope, and if, as plaintiff

21   alleges, defendant is violating the Rehabilitation Act by denying mentally disabled beneficiaries

22   meaningful access to benefits, the injuries are occurring nationwide.  Nonetheless, defendant makes a

23   credible argument that plaintiff has failed to bring forth representative plaintiffs from anywhere

24   outside of San Francisco.  In Califano, the Supreme Court cautioned against the certification of

25   nationwide class actions:

26           A federal court when asked to certify a nationwide class should take care to ensure
             that nationwide relief is indeed appropriate in the case before it, and that certification
27           of such a class would not improperly interfere with the litigation of similar issues in
             other judicial districts.

28

19

1    442 U.S. at 702.  If this court is going to certify a nationwide class action in this action, plaintiff must

2    bring forth representative plaintiffs from other parts of the country.  This issue is addressed further in

3    the following section.

4         In sum, the typicality requirement has been met with respect to class members served by the

5    San Francisco SSA district office.

6

7         E.    Adequacy of Representation[7]

8         Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the

9    interests of the class.  To satisfy constitutional due process concerns, unnamed class members must

10   be afforded adequate representation before entry of a judgment that binds them.  See Hanlon, 150

11   F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42–43 (1940)).  "Adequate representation

12   depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing

13   of interests between representatives and absentees, and the unlikelihood that the suit is collusive."

14   Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994) (internal quotation omitted).  "Resolution of two

15   questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts

16   of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

17   action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020 (citation omitted).

18        1.    Class Representatives

19        Defendant asserts that Davis and the proposed plaintiffs may not be able to adequately

20   represent the class because they all lack the capacity to withstand the rigors of litigation.  Defendant

21   further argues that the named plaintiff is subject to unique defenses "because the injury [he has]

22   alleged for standing purposes is increased mental stress from contact with SSA."  Opp. at 15.

23   However, since disabled minors in Sullivan, 493 U.S. 521 (1990), and mentally retarded women in

24   Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999), were approved as class representatives by the

25   United States Supreme Court, there is no reason plaintiff Davis and the proposed plaintiffs could not

26   withstand the rigors of litigation.  Indeed, plaintiff chose to bring this litigation in the first instance.

27

28

1   Further, aside from the current mental condition of the plaintiffs, there is no evidence to suggest that

2   plaintiff cannot withstand the rigors of litigation.

3         Plaintiff purports to bring this action as a Rule 23(b)(2) class action, which provides, "the

4   party opposing the class has acted or refused to act on grounds that apply generally to the class, so

5   that final injunctive relief or corresponding declaratory relief <u>is appropriate respecting the class as a</u>

6   <u>whole</u>." Fed. R. Civ. P. 23(b)(2) (emphasis added).  If this case is properly brought as a Rule

7   23(b)(2) class action—<u>see</u> section II, <u>supra</u>—then the final injunctive or declaratory relief is

8   necessarily appropriate for the entire class.  Additional remedial measures may be needed for

9   particular individuals, and those individuals will not be prevented from pursuing those remedies.

10  Consequently, defendant's arguments regarding remedy put the cart before the horse.[8]

11        Defendant also argues that Davis has a conflict with the proposed class because he does not

12  directly receive mailings from SSA, but instead has mailings sent to his attorney.  This is not a

13  potential conflict.  If defendant is violating the Rehabilitation Act, then this court could issue a

14  declaration and injunction prohibiting such a violation.  However, the burden of integrating proper

15  policies, such as notice mailing practices, would remain on defendant.

16        Finally, defendant argues that plaintiff has failed to bring forth representative plaintiffs from

17  anywhere outside of San Francisco.  As previously noted, the Supreme Court has cautioned against

18  the certification of nationwide class actions.  <u>Califano</u>, 442 U.S. at 702.  Plaintiff relies on a

19  presumption that SSA's San Francisco district office applies policies consistent with those applicable

20  across the nation.  This is not sufficient.  If this court is going to certify a nationwide class action in

21  this action, plaintiff must either bring forth representative plaintiffs from other parts of the country

22  who have suffered similar harm resulting from their respective SSA office policies or bring forth

23  evidence that the policies applied by the San Francisco office are applied by all SSA district offices

24  nationwide.

25              2.     <u>Class Counsel</u>

26        Plaintiff is represented by Steven Bruce from the People with Disabilities Foundation.

27  Defendant challenges Mr. Bruce's adequacy to represent the class, stating that "proposed class

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  counsel has no experience with class litigation and cites only one unsuccessful federal case as

2  demonstrative of his federal litigation experience." Opp. at 16.

3      Mr. Bruce has experience as a public defender in Florida; as an employee with the United

4  States Department of Health, Education, and Welfare's Office for Civil Rights; as an employee with

5  the United States Department of Health and Human Services' Office for Civil Rights, where he

6  worked on Section 504 cases; as a staff attorney with the SSA's Office of Hearings and Appeals; as a

7  government benefits supervisor for a legal aid office; and as the head of a Social Security disability

8  practice. Bruce Dec., ¶¶ 3–4. Mr. Bruce currently serves as the Executive Director and Managing

9  Attorney of the People with Disabilities Foundation. Id., ¶ 5. Finally, Mr. Bruce previously

10  represented Timothy Gibler in an action against the SSA. Id., ¶ 7.

11      In light of Mr. Bruce's experience, defendant is correct that Mr. Bruce lacks experience with

12  class action litigation, and this is illustrated in plaintiff's moving papers. Mr. Bruce seems to lack

13  any substantial federal litigation experience, nor has he associated himself with more experienced

14  class counsel in this action. In light of Mr. Bruce's limited class-action experience, the court finds

15  that if Mr. Bruce associates an experienced federal class-action attorney, he can provide adequate

16  representation.

17

18  II.    Rule 23(b)(2) Requirements[9]

19      A party seeking certification of a class under Rule 23(b)(2) also bears the burden of

20  establishing that "the party opposing the class has acted or refused to act on grounds generally

21  applicable to the class, thereby making" injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2). For a

22  class to be certified under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or

23  practice that is generally applicable to the class as a whole[,] [e]ven if some class members have not

24  been injured by the challenged practice." Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998).

25      In Walters, the Ninth Circuit affirmed a Rule 23(b)(2) class certification where the plaintiffs

26  sought "declaratory and injunctive relief on the ground that the administrative procedures used by the

27  INS to obtain final orders under the document fraud provisions of the Immigration and Naturalization

28

22

1    Act of 1990 violated their rights to procedural due process." Id. at 1036 (internal citations omitted).

2    The government argued that class certification was improper because numerous individual

3    administrative proceedings were likely to result from the district court's decision. Id. at 1047. The

4    Ninth Circuit called this focus a "fundamental misunderstanding" and noted that "[a]bsent a class

5    action decision, individual aliens across the country could file complaints against the INS in federal

6    court, each of them raising precisely the same legal challenge to the constitutionality of the [INS]

7    forms." Id. Thus, class certification was aligned with the purposes of Rule 23. Id. Furthermore, the

8    Ninth Circuit clarified that the government's "fundamental misunderstanding" of Rule 23(b)(2) was

9    illuminated through a comparison with Rule 23(b)(3), which requires that common issues

10   predominate. Id. The Ninth Circuit explained that for Rule 23(b)(2) class actions "[i]t is sufficient if

11   class members complain of a pattern or practice that is generally applicable to the class as a whole."

12   Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &

13   Procedure § 1775 (2d ed. 1986) ('All the class members need not be aggrieved by or desire to

14   challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)')).

15           Similarly, plaintiff here complains that SSA uses a mechanical formula for determining when

16   to send ten-day "Notice of Disability Cessation" letters and that this policy fails to take into account

17   individualized factors related to mental disabilities that differ from other disabilities. SAC ¶ 28.

18   Such a policy is applicable to the class as a whole. Plaintiff here asserts that this policy serves to

19   discriminate against beneficiaries with mental disabilities because this class of beneficiaries is

20   disparately impacted. Id., ¶¶ 24, 30–41. Furthermore, defendant makes arguments here that parallel

21   those made by the defendant in Walters—alleged violations of the Rehabilitation Act require a fact-

22   based, individualized analysis, such that a class action is inappropriate. For the same reasons as those

23   stated in Walters, the requirements of Rule 23(b)(2) are met.

24

25   CONCLUSION

26           For the foregoing reasons, the court GRANTS plaintiff Davis' motion for leave to amend only

27   with respect to his FOIA claims and DENIES the motion in all other respects. The amended

28

UNITED STATES DISTRICT COURT
For the Northern District of California

23

1   complaint, if any, shall be filed within twenty (20) days of the date of this order.  Defendant shall file

2   its answer within twenty (20) days of the filing of the amended complaint.

3       Plaintiff's motion to certify pursuant to Rule 23(b)(2) is DENIED.  Plaintiff is granted leave

4   to re-file the instant motion within thirty (30) days, if within that period plaintiff can: 1) set forth

5   sufficient admissible evidence to satisfy the numerosity requirement; 2) associate an experienced

6   federal class-action attorney; and 3) either bring forth representative plaintiffs from other parts of the

7   country who have suffered similar harm resulting from their respective SSA office policies or bring

8   forth admissible evidence that the policies applied by the San Francisco office are applied by all SSA

9   district offices nationwide.

10      IT IS SO ORDERED.

11

12  Dated: May 1, 2008

13                                                  _____
                                                    MARILYN HALL PATEL
14                                                  United States District Court Judge
                                                    Northern District of California
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

<u>ENDNOTES</u>

1.      This court finds that Davis neither points out nor justifies the late appearance of some new information in the PTAC.  <u>Compare</u> PTAC ¶ 9 (identifying plaintiff Davis' doctors and his frequency of treatment), <u>with</u> SAC ¶ 34 (stating only that plaintiff Davis "needed increased anti-psychotic medication and/or psychotherapy").  What plaintiff Davis stands to gain from this type of late insertion is unclear, given that this court, and all federal courts, use notice pleading.  What plaintiff Davis stand to lose, however, is significant, as this court does not take kindly to such tactics, be they deception or merely sloppy drafting.

2.      The identity of proposed plaintiff Doe is protected pursuant to Civil Local Rule 79.5.

3.      Davis suggests that this argument amounts to a conclusion that the proposed plaintiffs should not be permitted to assert their human and civil rights as a result of their mental disabilities.  Plaintiff's argument is both inflammatory and untenable.  Proposed plaintiffs had every right to timely assert their claims.  The issue at present, however, is whether plaintiff Davis can show why justice requires the addition of *these* proposed plaintiffs to *this* litigation after a fifteen-month period of delay.  Only when determining whether plaintiff Davis' justification is valid does this court find the mental disabilities of the proposed plaintiffs significant.

4.      Davis argues that the Ninth Circuit, in <u>DCD Programs, Ltd. v. Leighton</u>, 883 F.2d 183, 186 (9th Cir. 1987), specifically held that delay alone is insufficient to justify denial of leave to amend.  The court in <u>DCD Programs</u>, however, footnoted the very sentence cited by Davis to clarify that past grants of leave to amend may justify denial of additional leave.  Distinguishing grants of past amendments from general undue delay, the court noted that "a district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint."  <u>Id.</u>  (citations omitted).

5.      Davis' failure to earlier present these Section 504 claims is particularly inexplicable when some of these claims were also at issue in prior litigation filed by proposed Plaintiff Gibler while represented by Davis' counsel.

6.      Dr. Fry's declaration is currently premature as expert evidence is unnecessary at this stage in the class certification determination.  Therefore, this court will not consider his declaration.

7.      Defendant challenges this court's subject matter jurisdiction with respect to the proposed "future applicants," citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 328 (1976) and <u>Califano</u>, 442 U.S. at 701, 704.  However, this argument as been analyzed and rejected in section I(A), <u>supra</u>.

8.      Defendant cites an article describing how some individuals with mental disabilities desire "mainstreaming" in an effort to de-stigmatize mental illness.  Mireya Navarro, <u>Clearly, Frankly, Unabashedly Disabled</u>, N.Y. Times, May 13, 2007 (available at http://www.nytimes.com/2007/05/13/fashion/13disabled.html).  Yet, the article in no way reflects on how potential class plaintiffs would desire different relief from that which plaintiff Davis requests.

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9.      The court questions whether the policy justifications for class action litigation justify class certification in this case.  It is questionable whether preserving judicial economy and aggregating small claims that might otherwise fall through the cracks, for example, will really be accomplished by an action that seeks declaratory and injunctive relief which, if plaintiff is successful, would likely affect the wide swath of people he seeks to benefit.